CHESAPEAKE & O. RY. CO.

v.

COMMONWEALTH.

Court of Appeals of Kentucky.

June 4, 1954.

J. K. Wells, Paintsville, Gray & Woods, Porter M. Gray, Ashland, for appellant.

J. D. Buckman, Jr., Atty. Gen., John B. Browning, Asst. Atty. Gen., W. D. Sparks, Commonwealth Atty., Louisa, for appellee.

MOREMEN, Judge.

Appellant, Chesapeake & Ohio Railway Company, was indicted for the offense of maintaining a common public nuisance. A descriptive part of the indictment reads:

"The said defendants the Chesapeake and Ohio Railway Company did on the 23rd day of September 1953, and on divers other days and times within twelve months before the finding of this indictment, unlawfully, wilfully and knowingly having built, erected and maintained a railroad bridge, fills, abutments, piling posts and piers and other obstructions unknown to the grand jurors, in and across Greasy Creek of Jennys Creek and Greasy Creek Public Highway in such place, manner and way so as to obstruct the normal flow of Greasy Creek and by so placing constructing and maintaining said bridge, abutments, piling, posts, piers and other obstructions, in such manner, place and way as to cause gravel, dirt, mud, filth and debris, a further description to the grand jury

being unknown, and swamps, to catch, accumulate, fill and clog said creek bed and public highway and rendering said public highway dangerous and impassable and unfit for the traveling public to use * * *."

The trial resulted in a verdict of guilty and the punishment was a fine of $3,000.

 A public passway may be established by prescription in the bed of a creek, McGlone v. Maynard, 303 Ky. 415, 197 S. W.2d 918, and the evidence in this record discloses that the bed of Greasy Creek had been used for travel by the public for a period of sixty years. A road which has been used by the public for such a great period of time must be regarded as a public highway. Witt v. Hughes, 66 S.W. 281, 23 Ky.Law Rep. 1836. And a railroad is subject to indictment for maintaining a nuisance where it constructs a bridge across a watercourse used as a highway in such a manner as to cause deposits to settle or the water to deepen. Louisville & N. R. Co. v. Commonwealth, 231 Ky. 554, 21 S.W.2d 981.

About forty years ago, the B. S. & K. R. Railway Company constructed a bridge across Greasy Creek which allowed a clearance of 10 to 12 feet between the creek bed and the bridge. A space between the piers of this span was traversed by the road.

In 1940, appellant, Chesapeake & Ohio Railway Company, having obtained control of this section of the track, built a new bridge and placed a new set of pilings or piers under it. This bridge is of standard construction and has piers 12 feet apart. The channel of the creek, which is about 6 feet wide, is situate between two of these piers. The clearance, at the time of construction, was as great as that which formerly existed.

About the time of the erection of this new bridge, and both above and below it, the creek bed began noticeably to fill with alluvial deposits so that by the time the indictment was returned in this case, the clearance under the bridge had been re-

duced to 5 or 6 feet. Persons who were accustomed to using the bed of this creek as a road were forced to reach the regular county road by transgressing, with his permission, the private property of Charles Carpenter.

The Commonwealth admits that the direct cause of the obstruction of the passway was the filling in of the bed by sediment, but insists that this deposit is traceable in turn to methods used in the reconstruction of the bridge in 1940. Witnesses introduced by Commonwealth stated that when this bridge was being built new sets of piling were placed in the creek bed near the old piers, and the old piers were permitted to remain some six or eight months before they were sawed off at bed level, the inference being that the course of the stream was altered with the result that the suspended matter in the water was precipitated.

We are unable to accept this theory because it is unsupported by the evidence. The proof is overwhelmingly to the effect that the entire creek bed has gradually filled, both above and below the bridge and even to the mouth of the stream. Most of the witnesses introduced by Commonwealth refused to hazard a guess as to the cause of the deposits. The most damaging testimony was given by Charles Carpenter. This is an excerpt from his testimony:

"Q. You testified, Mr. Carpenter, about this road becoming gradually impassable; how long a period has been involved? A. When I began to pay attention to it was when it began to hurt me and I couldn't travel it right.

"Q. What year was that? A. It would be within five years.

"Q. What happened then was the creek bed simply filling up with sand? A. This bridge was being filled up in under there with sediment and things like that.

"Q. The Railway Company never lowered the bed of the bridge, that is, the level of the track? A. I believe it was raised a little.

"Q. And the interference you had was caused by the creek bed coming up, wasn't it? A. Yes, sir, but it was caused by these pilings being in there.

"Q. But the primary thing was the fact that the creek bed was coming up closer to the bed of the track? A. Yes, sir, it was filling in there.

"Q. It was gradually filling in? A. Yes, sir.

"Q. And that was over a great period of years? A. I would say that within the last five years it has been most noticeable and this frog pond there close to my garden."

In Louisville & N. R. Co. v. Commonwealth, 231 Ky. 554, 21 S.W.2d 981, 983, we said:

"On another trial the court will allow the witnesses each to state the facts, but not to state the conclusions from the facts; that is, no one should be allowed to state that this thing or that thing caused the ford to fill up or become deeper, unless he shows that he is an expert on that subject, and qualified to speak as an expert."

But Carpenter's testimony, even when incompetent matter is not ignored, is not sufficient to support a verdict of guilty.

There is no proof that the bridge was faultily constructed or that it was not built in conformity with good and sound construction principles. When it was completed the creek bed was entirely between two of the new piers. Even if the old piers were allowed to remain for a period of six to eight months after the erection of the new ones, it was not shown that this act caused sediment to accumulate under the bridge. A reference to the above quoted portion of the indictment will show that this prosecution was based entirely on the premise that the bridge supports caused the creek bed to become impassable while all the proof, to us, seems to point conclusively to the fact that the rise of the bed because of natural accruals was

the sole cause of the passway becoming unsuitable for convenient travel. In any event, the old piers were removed and the new piers were in existence a long time before the principal witness even noted that the creek bed was filling. The fact that the creek bed filled both above and below the bridge to its confluence with Jennys Creek demonstrates, we believe, beyond a doubt that the direct and proximate cause of the obstruction under the bridge was the gradual rising of the entire creek bed. The surmise of witness Carpenter and the theory of the Commonwealth are both within the realm of speculation.

From an examination of the whole record in this case, we are convinced that the mere erection of the bridge across this stream was not the direct and proximate cause of the condition which now exists. On the other hand, it was demonstrated beyond a reasonable doubt that this entire creek filled up due to natural increments resulting from alluvial deposits.

■ When the public acquired an easement of passway in this creek bed by prescription, that easement was burdened with the results of the operation of natural laws. When the character of the territory was changed by extensive timber operations, the results obtained here seem to have been inevitable.

Upon a retrial of this case, if the evidence is substantially the same, the jury should be instructed peremptorily to find for the appellant.

Judgment reversed.